Counsel, Your Honors, may it please the Court, my name is Brianna E. Kotke, and I am from Missoula, Montana. I am CJA counsel for Mr. Merchberger. I am going to focus on the two conditions of supervised release. Ms. Dwyer will be focusing on the length of supervised release for her client. We would like to reserve combined five minutes for rebuttal. Both of the Conditions 8 and 10 in this case violate not only 18 United States Code Section 3585D by depriving more liberty than is reasonably necessary, they also violate due process by providing an inadequate notice of the requirements of the defendants and improperly delegating policy decisions and Article III sentencing authority to a probation officer under one condition and under the other to a probation officer and a sex offender treatment provider in the case of the other. This results in an arbitrary and an ad hoc enforcement of these conditions and it unduly inhibits the exercise of the defendant's First Amendment rights. The standard of review in this case, I believe, is de novo as this is a constitutional issue. I'm going to first talk about Condition 8. In line with the, I believe it's NERCI, please excuse me if I pronounce that incorrectly, and then the recent decision of this court in COSSI, Condition 8 must be remanded because it restricts the defendant's access to depictions of adult sexually explicit conduct, whether or not it may have First Amendment value, because it uses a statutory definition that applies only to children under 18 United States Code Section 2256. The district court tried to assist with any ambiguity by adding, inserting the language quote, primarily designed to arouse sexual desire, close quote. From the defendant's perspective, this does not help. This enhances the ambiguity of this condition because it further violates the due process rights of Mr. Merchberger and his co-defendants because they have no idea what material or what conduct will or will not get them into trouble. The expectations of the probation officers may change, or the expectations that are expected of the defendants may change, depending on the subjective thoughts of differing probation officers. It may lead to a situation where, for example, if Mr. Merchberger during his lifetime supervision gets a new probation officer, his second or third probation officer may have a very different view about what is primarily designed to arouse sexual desire. The same is true for the different co-defendants in this case because obviously they'll have different probation officers who may apply this condition differently, which is untenable. I think I have the right passage from NERCI in front of me, and what the panel there said is that they remanded the case back to the district court with a construction of the condition of supervised release, which was it applied to materials of sexually explicit conduct involving children, which is not part of this appeal, and then quote, to any materials with depictions of sexually explicit conduct involving adults defined as explicit sexually stimulating depictions of adult sexual conduct that are deemed inappropriate by NERCI's probation officer. And I apologize. I have only my notes for the condition in this case, so I won't get this exactly right, but the restriction was I think something like access to materials depicting sexually explicit conduct as defined in Title 18 United States Code 2256-2A if taken as a whole, something like, you know, to stimulate sexual desire unless otherwise improved by the probation officer. And my question for you is those seem pretty close to me. So what it is exactly that the district court in this case needed to do that it didn't do to come within our holding in NERCI? Well, Judge, I think that that's highlighted by the Cossie decision, which was recently remanded based on the almost exact same language that is here in this case. And that was remanded in, I believe it was April of this year. Justice Payas, I believe you were on the panel that reversed that case. Was that a mem dispo? And it was different. Indeed, it was. The only difference with that opinion was the insertion of the language primarily designed to arouse sexual desire. So that's the only addition that our condition has that the Cossie decision did not. And it's our position that that insertion of that language creates further ambiguity rather than assisting with the ambiguity. In turning to condition number 10, I believe that this condition is overly broad because it . . . Let me just back up. I'm still not quite sure. What is it that you want . . . what would the district court have to do in order to satisfy your concerns here about ambiguity? Well, I think, first of all, we need to get rid of the sex offender treatment provider. And what that . . . Answer my question. Okay. What would the district court have to do to change . . . in changing this language to satisfy your concerns that there's ambiguity? Well, Judge, I'm not sure how to answer that. It's been the position of the head federal defender in Montana that the federal defender's office will not comment on what language should be used because we are not . . . You're no help. Definitely no help. I understand completely, but I'm following the lead of our federal defender here. Let me cover the question a different way that might give you a little more daylight. In your brief, you talk about materials that you think your client should have access to that he might not get access to if his probation officer applies the standard that is set out as a condition of supervised release. My question for you would be, wouldn't the same materials potentially be unavailable to him if the probation officer applied the standard that was crafted in NERCI? I'd have to say the answer would be yes. So I just want to hit on Condition 10 before I take all of Ms. Dwyer's time. I'll show you your time. Don't worry. Okay. I just believe that the issue that is of most concern in Condition 10 would be that it restricts computer access rather than Internet access. That captures conduct that is completely innocent and that has no nexus to the purpose of supervised release or of sentencing. The Quinzon case, which is 643 F. 3rd, 1266 from the Ninth Circuit, says that while reasonable Let me just give you a quote. Counsel, doesn't the condition say that you can't possess or use a computer or other device with access to any online computer service? Yes. And I believe the most of... Without the prior approval of the probation officer. Right. That doesn't suggest that you couldn't use a computer that didn't have access to online computer service. Right? That's your... That was your concern, that it's too broad because it restricts computer access rather than Internet access? Correct. Well, if we're only worried about computer... An Internet access without a computer, at least at this point in our technology, is not useful. Right. But... So you have to have a computer to interpret the... To read the Internet. So if you're just interested in having him have access to a computer without Internet access, I don't see that this provision... I don't see that this provision is a problem for you. No, that's not at all my concern. The concern is him not being able to have access to the Internet. Okay. So you do want Internet access? Yes. I'm sorry if I misstated my position there or misunderstood you. I thought you were complaining about access to a computer. No, I'm complaining about... Access to the Internet. He could be denied access to a computer under this if his probation officer thinks that's appropriate, but I'm more concerned about he can't have any device that can hook to  So... Right. Without the prior written approval. At this point in time, I don't even think that he could have a cell phone. But it would be a complete ban if his probation officer said, no, you don't get to do that. And so I think the more appropriate thing here would be to allow him... You can't have a cell phone, not the one that doesn't have an old flip phone, right? They're getting harder and harder to find. And he will not be getting out for 19 years. So in 19 years, it will be difficult for him to find a flip phone with no Internet access. It will be difficult for us to find an iPhone in 19 years. Exactly. We have no clue what that's going to look like. I have a question for you. Yes, sir. These conditions of supervised release. Mm-hmm. When he gets out, they can always be revised. That's true. The defendant can make a motion all the time, anytime. I think that's my question also, and that is, the district court is, you know, whether it likes it or not, it has to forecast into the future a couple of decades. And really, it's hard to imagine what that world looks like. And if it turns out that the probation officer applies this condition in a way that does infringe upon the defendant's rights, can't the defendant then raise that issue with the district court and say, so in other words, we're not worried about vague on its face. If there's a problem down the road, he'll be able to get a remedy from the district court. I'm not asking this question the way I want. I understand what you're saying, and I certainly don't envy the position of the district court for having to forecast these things. I think if we deal with it on the front end, though, we wouldn't have the problem of having to come back on the back end. My suggestion would be to allow monitoring, which is a lesser deprivation of liberty, especially given our internet-driven society, rather than to just say, you can't do it unless your probation officer says so. I think it would be more prudent to say, you can do so, subject to monitoring, because that's a less restrictive condition. And with that, I'll reserve our time. Let me hear from, we'll hear from Mr. Gustafson's counsel. Gustafson. Good morning, and may it please the Court. Jennifer Dwyer on behalf of Tony Gustafson. I just wanted to address Your Honor's concern briefly with respect to the first supervised condition. I think that Mr. Gustafson's issue was that the use of the statutory definition of sexually explicit conduct should only apply to children, and there should be a separate provision addressing the definition of sexually explicit conduct involving adults, and that that was one issue that Mr. Gustafson had with his supervised condition number 11, which I believe is Mr. Merchberger's condition 8. Would you answer my question that I posed to Ms. Kotke differently about what meaningful difference there is between the condition that applied to your client and the condition imposed in NERCI? Thank you, Your Honor. I believe that the difference is that the district court stated, depicting sexually explicit conduct as defined within the statute, if the materials taken as a whole are primarily designed to arouse sexual desire. And I think that that phrase did muddy the waters, as opposed to the mandate from the Ninth Circuit in NERCI about what does that mean, taken as a whole and primarily designed to arouse sexual desire? Is that something that is a percentage of that material, or is it something that we can't decide until after it's seen and then— Don't you think that this provision probably permits more material into the hands of the defendant than the NERCI condition? In NERCI it says, explicit sexually stimulating depictions of adult sexual conduct. But there are many artistic works in many different media that might contain such depictions, and if I were to apply NERCI, none of them would come in. So I would agree with you that there's a subjective element in the test that was—in NERCI that was applied to your client, but it's hard for me to see how that works any kind of injury, constitutional or otherwise, that falls outside the limit of NERCI. That's the difficulty I'm having. I understand, Your Honor. I think it is a difficult issue, but I think that what Mr. Gustafson had asked the district court was just to tailor the language much more closely to NERCI to avoid any potential inconsistencies and to avoid any potential constitutional issues. I know you took the microphone to address a different issue, so I'm not meaning to use up all your time. Thank you, Your Honor. What I'm prepared to address now is that we—Mr. Gustafson believes that the district court committed procedural error when it made repeated references to the fact that there was no psychosexual evaluation presented to the court for its determination of medical professional opinion on whether there was a higher level of a risk to reoffend with Mr. Gustafson. Mr. Gustafson submits that those repeated references at the sentencing hearing and in the statements of reasons, they were clearly relied on by the district court and that that was inappropriate. There was no obligation for the defendant to present to the district court any kind of medical expert opinion. The defendant may present other information regarding a risk to reoffend, including pointing to the criminal history or the age of the defendant, and the government may do the same thing. There is other materials available to the court, and that was presented to— I thought the district court judge said that he wasn't—he made reference to the fact that there wasn't one, but that was not the basis of his decision to impose a lifetime supervised evaluation. Yes, Justice Pius. I believe he did make that statement. However, I think it's clear from the record in the statement in his statement of reasons that the fact that there wasn't one did cause him actual concern that there was a risk to reoffend, and as such, the judge was pointing to the lack of evidence to make the assumption that this defendant was at a higher risk to reoffend. Let me ask you this. Now, I forget what his sentence was. How long was his sentence? His sentence is two hundred months followed by a lifetime of supervision. Two hundred months, that's . . . Sixteen and a half years. Quite a chunk of time, right? Yes. Now, when he gets out, after he gets out, he's going to have supervised release for a while. Why couldn't he move the district court to cut back on the supervised release after he's demonstrated, you know, whatever, complied with the probation officer's requirements, worked with the sex offender people, and in prison he's going to get treatment and . . . Yes, Your Honor. . . . all this stuff that's going to happen in the next sixteen or twenty years? Yes, Your Honor, and he certainly is entitled to utilize that statute to bring the issue before the district court again to resolve those. However, this issue is properly before Your Honors to address as a constitutional issue. This is not of constitutional magnitude, so this is abuse of discretion, isn't it, this issue? Your Honor, I believe that since Mr. Gustafson is arguing that this is a due process violation to be pointing to unreliable and unsupported issues to reach the decision to impose a lifetime decision that it is a constitutional issue. If we were to find . . . if the panel were to find that the district court did not give inappropriate consideration to the fact of no psychosexual evaluation, do you disagree that there's . . . that there was adequate evidence in the record on an abuse of discretion standard for the district court to have imposed this condition? I do disagree, Your Honor, and I believe that one of the references the district court made was to the content of the . . . of the nature of the images of Mr. Gustafson's personal collection, but the district court, again, violated Mr. Gustafson's rights to due process by failing to explain in any way how the nature of the content of those images has anything to do with the risk to re-offend either 10 or 15 or a lifetime later. Thank you, Your Honors. I apologize for going over my time. No, that's okay. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the court. My name is Cindy Peterson. I'm an assistant U.S. attorney for the District of Montana. I would like to start with Mr. Gustafson and what was the last argument with regards to the due process, the alleged due process violation on imposing lifetime supervised release. There is a continued reference to these . . . repeated references to the fact that this . . . that there was no psychosexual evaluation. I respectfully submit there were not repeated references. We have cited in our briefs the exact reference from the court, and the court in that reference very short and swiftly said, I realize I don't have one of these evaluations. Typically they help me, but I'm not going to hold that against the defendant in this particular case. And so when you look at what the standard is under the Vonderwersthorst case in the Ninth Circuit, it does not meet that standard. It doesn't . . . there's no way that the . . . that the judge imposed a lifetime supervised release based on anything that was false or unreliable. And if they get past that, then they also have to show that it demonstrably made the basis for the sentence, demonstrably made the basis for the sentence. And here it just . . . it absolutely did not. The court made specific findings as to why he was imposing this particular sentence on Mr. Gustafson. Mr. Gustafson had paid for child pornography. He had been looking at child pornography since 2000. He had terrible, terrible, violent, sadistic images of children. He had posted terrible, sadistic, violent images. His primary collection involved spy cams and webcams. He was on tour. Everything in the record supports his finding on why he based and imposed a lifetime supervised release. It had nothing to do with the quick reference to his lack of psychosexual evaluation. And so because of that, Your Honor, we would argue that you don't even get to the sentencing disparity that has also been argued in the briefs. With regards to the conditions of supervised release that Mr. Merchberger and Mr. Gustafson have both brought up, the first one being the sexually explicit materials. So one thing that I think that has happened somewhat in the briefs and was argued a little bit in the district court has to do with the NERCI decision. And that is when you read what the court was talking about in the NERCI decision, the reason that it was remanded for a more tailored sexually explicit condition was because it said there is no specific showing why NERCI's access to non-pornographic depictions of adults must be restricted in order to serve the purpose of supervised release. So in both of these cases, we're not talking about non-pornographic images of adults. That's first and foremost. Because when they were referencing just the definition, you were starting to get into just nude photos of adults. And the court here was trying to specifically tailor the provision so that it was very narrow, so that it really did only get to the images that were, when taken as a whole, were derived to be sexually explicit. That's what the court was trying to ban. The second part of it is that in both of these cases, unlike NERCI, the court made a specific finding as to why adult pornography and adult sexually explicit images should be banned. That was missing in NERCI. And I know that it has been, the Cossie decision has been referenced, but that is different. That was actually my case. And the reason what was argued in the Cossie decision is, again, there was no specific finding as to why it related to adults. And so that came up. It was that Mr. Cossie had been sentenced a while before. It was a revocation. We didn't make a really solid record in terms of his adult, why we needed to restrict him from adult pornography. That's not the case that was before the court here. The court here had a specific reason for why it wanted to ban both adult and child sexually explicit images, and it was aware of NERCI, and it came up with a condition that we believe is more narrowly tailored than what Mr. Gustafson was requesting, and certainly what is offered up in NERCI. With regards to the internet restriction, that, we think that the Ninth Circuit controls on that. We have given the court cases. It's clear that this particular internet restriction is reasonably related to the sentencing goals. The same thing with the monitoring. We've given the courts the sites to Riordan as well as to Quinznon that says you don't have to say exactly how because it's not going to apply 15 or 20 years from now anyway, so we're going to let that make sense in the future because technology is going to change. There was, I believe Mr. Gustafson cited the Riley case out of the Ninth Circuit. That is completely different because in Riley they were disavowing a blanket prohibition of computer use. That's not what was done in this particular case. The last thing that's been presented to the court has to do, Mr. Merchberger has argued the improper delegation and in his reply brief he also brings up this improper delegation to the treatment provider, and I would argue that that is not at all what the court was doing in referencing the sexual offense treatment provider. I think that when you look at conditions that third parties are frequently referenced, whether or not they're chemical dependency providers or mental health counseling providers or law enforcement officers with regards to remaining law abiding, but that has nothing to do with the court delegating its supervisory authorities. With regards to the improper delegation to the probation officer allegation that's been It is an improper delegation, but the one case that I would like to particularly bring to the court's attention is the Bronson case, which was a co-conspirator and it's referenced in our statement of related cases. Mr. Bronson, this court handed down a memorandum decision where it specifically addressed that this was not an improper delegation, and there is language in there that specifically talks about how ultimately the court will determine whether or not Mr. Bronson has violated his supervised release when it's properly supported by revocation petition. It goes through all the reasons why this isn't an improper delegation. Thank you, Your Honor. Thank you, Counsel. Thank you, Counsel. In response, regarding condition eight in Merchburgers, anyway, I'm not sure what it is in Mr. Gustafson's. The government has just stated that there was a specific showing regarding why adult pornography should not be allowed in Mr. Merchburger's case, and that is not correct. There was no psychosexual evaluation in Mr. Merchburger's record. There was no specific findings whatsoever about Mr. Merchburger or whether he should be looking at adult pornography. In fact, the only reference was made by the government discussing other people's psychosexual evaluations and other recommendations to other defendants, which the government is correct. I did bring up in my reply brief. Regarding delegation— What did the district court actually rely on? I'm not sure what the district court relied on, but it certainly wasn't a finding about adult pornography. You just said they made a—the district court made a finding. I don't know what she's talking about. Regarding improper delegation, this court has held in the United States v. Stevens, which the site is for, 24— Counsel, there's—let's see, who's Ms. Cain? Ms. Cain is from Maine Justice in Washington, D.C. Okay, so she was a government attorney. Yes, it was Ms. Peterson and Ms. Cain, the prosecutors. So she's referred to a Dr. Scolati and talked about some restrictions that—and that she said, I want to be clear, that the defendant's collection of pornography involved adults engaged in sexually explicit conduct with children. So they were talking—she was talking about adult access as well. Right, but she's not the court making a finding. She's the U.S. attorney talking about— And then the court says, and I do agree. That's the first thing the court says. That his collection had adult pornography? We do think there's a sufficient factual basis for imposing this. Just wanted to make sure the record was clear on that, make sure your court agreed with that factual basis, the court, and I do agree. Okay, well, then I retract my prior statement, but I do want to point out that she was referring to Dr. Scolati talking about other people's psychosexual evaluations. The Stevens decision states that where the court makes a determination of whether a defendant must abide by a condition, of how or how many times, and whether a condition applies, and the defendant will be subjected to that condition, it's permissible to delegate in that situation when all that's left to the probation officer is the when and the where. In this case, the whether, the how, and the how many are all left up to the probation officer, so that's an improper delegation, and I'll leave Ms. Dwyer the rest if you don't have any other questions for me. Okay. Thank you. May I briefly? Yes. Certainly. The repeated references that the district court made to the lack of psychosexual evaluation occurs in the excerpts of record, pages 54 and 55, as well as the statements of reasons that was submitted to your honors under seal, and that statement reads that due to the fact that no psychosexual evaluation was made available to the court, the court has no professional information regarding the defendant's risk to re-offend, which is of concern considering the length of time the defendant has viewed child pornography. That's the last issue I would like to address. It's that the length of time that Mr. Gustafson had admitted he'd collected child pornography was since the early 2000s, and there had been another co-defendant, Mr. Hatfield, who had admitted to having a collection since the 1990s. He received just 10 years of supervised release. Given that Mr. Gustafson's criminal history score was zero, it's safe to assume that their cases are similar, and as a result, that demonstrates some sentencing disparities among the defendants. I think the rest, I think, is adequately explained on the briefs, unless there are further questions. Thank you. Thank you, your honors. Thank you, though. Thank you very much. We appreciate your arguments. Merchberger and Gustafson are submitted. Let's see, next up is Brown, I believe.
judges: Paez, Bybee, Tigar